at L. Mr. Lennertz for the appellant, Mr. Kramer for the appellee. Good morning. Good morning, Your Honor. I'm Dan Lennertz of the United States. If I might reserve three minutes for rebuttal. Okay. The district court in this case has decided error as a matter of law when it held that the terms harangue and oration, as used in 40 U.S.C. 6134, are unconstitutionally vague. And it further erred when it refused to adopt limiting constructions for those terms, as it's its duty under the law. Both harangue and oration have readily discernible meanings that do not allow for arbitrary or discriminatory enforcement in the context of speeches given in the Supreme Court building, particularly speeches, as the defendants engaged in here, given in the Supreme Court building during oral arguments. Can I ask you a question that's probably irrelevant to the outcome, but I really am curious. Why did Congress add harangue and oration, and why did the government charge harangue and oration? Your Honor, the legislative history suggests that harangue and oration first appeared in a law applying to speeches given on congressional property in the early 20th or late 19th centuries. It was that language that Congress, in 1949, then brought forward into the statute at issue. The legislative history suggests that Congress understood itself to be prohibiting speeches, generally, in the Supreme Court. That's what both the House and Senate reports reflect. It's also in the title of Section 6134, which speaks of speeches in the Supreme Court building and grounds. I'm sorry. Did the old legislation have allowed utterances provision? I'm not sure, Your Honor. I believe Congress may have simply covered. Close to the waterfront. The loud language provision, Your Honor? Yeah. That's what the district court thought, and the district court adopted a limit in construction that would prevent, that would apply only to loud language that disturbed or tended to disturb the normal operations. But why would it necessarily cover it? Because you could have a non-loud speech that's still a disturbing speech. Maybe that's what's sought to be covered, is that you could give, you could have a speech in the Supreme Court during oral argument that somebody might not consider to be loud, but it's still disturbing because somebody's standing up and giving a speech. I agree, Your Honor. I'm sorry. I didn't mean to suggest that the harangue and oration provisions are somehow redundant of the loud language provision, or that they necessarily cover the same conduct. I believe Judge Williams' question was whether loud, precluding loud language runs close to being constitutionally vague, unconstitutionally vague. No, no. I wasn't, no, I was simply trying to see why it was necessary to have, but I, obviously the thought of a, you get a quiet oration. It comes to mind, but it's not the first thing you think of. Well, Judge Williams had asked also why that was charged, and I was just wondering why the prosecution thought it was necessary here. I mean, wouldn't loud utterance have covered what happened? It is true that loud utterance covered what happened here. The, the charging history in this case shows that the U.S. Attorney's Office charged what is essentially the entire statute, as it often does. It charges all of the possible variations of the statute. And so it, the United States Attorney's Office charged both making a harangue or oration and uttering loud abusive or, I forget the other statutory term, threatening language in the Supreme Court building or grounds. And the District Court was, was disturbed by the fact that the U.S. Attorney's Office had charged language not at issue, particularly in light of the fact that the defendants challenged, their challenge was based largely on speeches that would be given in the Supreme Court plaza or other aspects that weren't at issue. And so the United States ultimately amended the information to address only what's at issue here. And there's no question that what's at issue here is making a harangue or oration or. Well, let me ask you a question about that, because let's start with harangue. So the way you describe harangue, the way you define harangue in your brief, you got a few, but the one you start with is forceful or angry speech. Why would you say there's no question that this was forceful or angry speech? What is it about those terms that would make it clear to me that it's forceful or angry? Both. The manner in which it was given under the undisputed facts show that at the very least it was a forceful speech. And what do you mean by forceful? That the defendants were standing, that they spoke loudly. It's the undisputed facts that they spoke loudly, that they disrupted the Supreme Court oral argument at issue. Two of the defendants are alleged to have had their fists raised while they gave the speech. And so all of this shows that at the very least. And how would you define force? What's a forceful speech? A forceful speech, your honor, is I don't have a definition of a forceful speech ready for the court. But that doesn't. It's clear that under these circumstances, why don't you have a definition? Because it seems like if I'm somebody who's trying to understand what the statute covers, I'd want to know what a forceful speech is. If that's the definition you go with, we can. I think there's a question about whether that's the right definition to go with. But but the government started with forceful or angry speech as its principal understanding of harangue. And it just I guess it wasn't immediately apparent to me what constitutes a forceful speech. I think at some point the rabbit hole of going down dictionary definitions to figure out what words mean needs to end. The court can't just keep going. But it's forceful, a good place to stop. Well, it is the core definition of the term harangue across multiple dictionary definitions. They all suggest that the term includes some sort of vehemence, some sort of ranting or bombast, all of which. So I wasn't sure about that because it just it seems to me that forceful and angry. I mean, I understand that you could say that sometimes you can look at a particular speech and say that it's forceful. When I think forceful, I think of all kinds of things. Maybe it's persuasive. Some people say forceful is a persuasive speech. I'm not sure what an angry speech is. I'm not sure whether these were angry speeches. I guess one would have to be there to know. But you started with that definition. There's another definition of harangue that I thought was the first definition in most of the dictionaries, which is speech addressed to the public. Yes, Your Honor, that's the first definition given in the dictionaries. And the government has recognized that if the court believes that harangue is somehow unconstitutionally vague, that that would be an appropriate limiting construction. Because that's the first definition. Correct me if I'm wrong. When I looked at the dictionaries, I thought that was usually the first definition speech addressed to the public or speech to a public assembly as opposed to forceful or angry, which is definitely also in some definitions. But I'm not sure why you characterize speech addressed to the public as a limiting construction and forceful or angry as the principal definition. The characterization as a speech addressed to the public is limiting insofar as it both needs to be to a public assembly. It also addresses what was the district court's concern and what the defendants argue, which is that somehow force and angry are unconstitutionally subjective and allow too much discrimination by police in terms of enforcing the statute. And so a speech addressed to a public assembly is limiting insofar as it eliminates any possible subjectivity. So I guess maybe it's a terminological question, but when I think of limiting construction and you may be right about this, I guess I'm thinking of something that's not not in the definition that serves to limit. Whereas it sounds like what you're saying is it's a more limited definition that's also available. I think that's correct, Your Honor. It's an also available definition that is in some respects more limited. And why did you start with forceful or angry instead of speech addressed to a public assembly? I'm just curious as to why wouldn't one start with speech addressed to a public assembly since that's the first definition? I think the U.S. Attorney's Office, we've started with the forceful or angry because that largely seems to reflect a general understanding of what the core sense of harangue is. That harangue, when used in the common vernacular and when used in the cases cited by the district court, doesn't simply mean a speech addressed to a public assembly. It has this element of vehemence or anger. It would be astonishing to characterize the Gettysburg Address as a harangue. Would it not? Under the modern usage of that term, that's absolutely true, Your Honor. Whether or not harangue had a different definition in 1864 is a different question, but it's unquestionably that this element... Or 1945. As far as I can tell, the first definition in 1945 of harangue is speech addressed to a public assembly. Maybe I'm wrong about that, but I thought that's what the dictionary said at that time. I believe that's true, Your Honor, but it also included... I believe it says... I can't remember exactly, but I believe it says especially a vehement or boisterous address. And so the especially suggests that that is the core use of that term, the most common usage of that term. And in fact, when one looks for the definition of harangue in the English Learner's Dictionary, which is supposed to be the most plain, direct meaning of the term as it's commonly used, that is a forceful or angry speech. And I think the answer to your question about what constitutes force is a level of vehemence, a level of loudness, I guess, as well. All of these come into... But whatever the forceful encompasses, it plainly encompasses standing up with your fist raised during a Supreme Court oral argument and saying, we rise to defend democracy. Is there any speech during... I think this might have been before a Supreme Court argument, but in anticipation of one while the court was in session. Is there any speech, any form of speech during that time by a member of the public who's sitting in the gallery that would not be considered forceful? I believe that a person angrily speaking to themselves while sitting down may not be considered forceful, but would nevertheless be a harangue because the person is exhibiting anger and vehemence. But again, as the Supreme Court has constantly cautioned, the fact that there are difficult hypotheticals in this scenario doesn't mean that the statute as written is unconstitutionally valid. Yeah, I think that's absolutely... That point is well taken. And of course, the fact that there's line drawing issues in many statutes doesn't preclude us from saying that statute is non-vague. I guess just getting a handle on what it means in every instance, which I take it to be the district court's concern and the defendant's argument is the question, because in every instance it has to be forceful or angry according to your primary definition. The district court and the defendant seem to focus on it somehow being wholly subjective as defined as forceful or angry or when oration is defined as formal. And those terms are just required that it be in the Supreme Court building. And those themselves are limiting terms. And then they're further limited by the fact that anger or formality do not depend on the effect the speech has on the listener. People may disagree about whether something shows anger or whether something reflects formality. But unlike annoying or indecent, those aren't wholly subjective depending on the effect on the listener. Isn't the question here whether we can determine a core meaning for the particular word? Well, I think yes, and there obviously is a core meaning for both of these words that the government has posited in terms of all of the dictionary definitions that the district court and the defendants rely on to sort of suggest different diagrams, a center overlapping piece that involves this element of force or anger. Similarly, whatever differences there might be in definitions of oration, which the district court itself understood are similar, the definitions it relied on have it as this center, the formal speech element. And those are also, as the court appears to recognize, reflect different possible behavior, which explains why Congress prescribed both harangues and orations. They aren't somehow rendering the terms the same. And for that reason, because there is this readily discernible core, because it's not entirely subjective, those terms are not unconstitutionally vague and the district court erred in finding that they were. In your Venn diagram metaphor, suppose there are definitions of the word, whatever the word is, that actually don't overlap with, suppose there are three definitions that overlap and a fourth definition in common use, which doesn't overlap with that overlap area. Does that, what effect does that have? That's just treated as a sport, irrelevant? I don't think it's irrelevant, but ultimately the court's judging whether the terms are readily understandable, given whether they have specific legal meanings, whether they have statutory definitions, and particularly given the context of the statute and the conduct at issue. In the court's hypothetical, the court has to use its common sense and look at this context to determine which of the definitions Congress actually intended in context of the statute and what it prescribes. And it doesn't have to be the case that harangue or oration are mutually exclusive, right? Because it sounds like part of your submission is we need to come up with something that harangue includes, that oration doesn't, and vice versa. And I'm not aware of any rule that says that every word in a statutory provision has to have a meaning independent of every other word in a statutory provision. They could be. Congress sometimes just acts inclusively to capture a general category here, speeches. I agree with that, Your Honor. And certainly it appears that Congress understood harangues and orations to cover the ballpark of speeches. There's no suggestion that Congress intended to leave, to not prescribe some form of speech that didn't constitute a harangue or oration and allow that very narrow subset of speeches to be given in the Supreme Court building or on the Supreme Court grounds. And certainly Congress could have used the term that it understood to mean a speech to a public assembly and also used oration, even though it maybe was entirely covered by that term, just to make sure it covered everything. There are no further questions. Thank you. Good morning, Your Honors, and may it please the Court. I think you've just heard the reason why district court's argument was correct. Almost two and a half years after the information was filed in this case, the government can't give you a definition of the word forceful as applied to a speech. What they've said, and that was the only definition they put forth in the district court and in their briefs in this court, was a forceful or angry speech. They didn't rely upon a speech to a public, an address to a public gathering, which I think is the first definition in the Oxford English, but the second definition in Merriam-Webster. I think that's the way it came out. But what you've heard, I think, when they tried to explain to you a forceful speech, well, having the fist raised means it's forceful, but that's purely, I mean, that's, how would anybody know that having a fist raised is a forceful speech? How would anybody? It would certainly be a clue. I mean, you might be raising your hand just to make a point, to show that you're convinced of your speech. I don't see how that makes it a forceful speech, necessarily, or how somebody would know in advance that that would make it a forceful speech. I also, angry speech clearly is in the eye of the beholder. Somebody, I mean, I think you can see numerous examples of how somebody might say, that person was very angry, and somebody else might say, no, no, they were perfectly... The cases accept the proposition that you have words used that apply to particular conduct people can disagree on. I mean, I think that the premise of what you're saying now is not sound. No, they can disagree, but if there's no standards, there's no settled legal meaning, there's nothing to show, there's no definition, and there's no core, you've just heard there's no core definition of the term, harangue. Judge Cerny Barson put forth the public address, the government has argued forceful or angry speech, there's just no core meaning of either one of these terms. Matter of fact, one of the... Wait a minute, what if the jury were charged in terms that require all of a number of characteristics? It would be, say, speech to a jury. I don't know what vehement means either in the term of... I think that just makes it... The problem with the definition of a forceful or angry speech is it just makes it just as vague. It doesn't clarify it at all. Same thing with oration, I think the district court was absolutely right about that. I mean, annoying, if annoying conduct is vague, it doesn't seem to me forceful or angry has any better definition than annoying. That's not a good answer to that. Annoying depends significantly on the reaction of the listener. Well, the only way to tell in many cases if somebody is angry is the reaction on the listener. You can sometimes tell, somebody can demonstrate anger, somebody could in a very soft voice say something, and that would take into account this, maybe to their kids, and the subjective, because the kids know that that's anger, but somebody looking at it, it would have to... It's an entirely subjective test. You're going to put in cases where it kind of begins to get ambiguous. Well, I don't think... And that doesn't get you where you need to go. It's not ambiguous, it just has no set legal meaning, the word forceful. The government stood up and said, we have no definition for the word forceful, two years after they put forth this as the definition for the word harangue. Your belief discards the court's examples of substantial risk in Johnson, just dictum of no significance. It's pretty emphatic about those terms not being too vague, contrasting them with the type of risk that was assessing in that case. It clearly was supposed to cover hundreds of possible scenarios. It clearly was dictum. It was addressing an argument that the dissent raised, but I mean... When a court draws a distinction between A and B, put the B on the okay side of the line, and A holds that A is on the wrong side of the line, that may be dictum in some technical sense, but it's pretty powerful. What they said was, those terms are applied to a specific conduct on a particular occasion, not as a general term that doesn't give notice. In that case here, the harangue would be applied to this episode before the court. Well, then that's true of every statute. Every statute is applied to an individual case, obviously. It wasn't true. One in Johnson would be applied to increased sentences on the basis of a whole variety of scenarios. Well, no, there was just one scenario, which otherwise involves conduct that presents a serious potential risk of physical injury. Yeah, but the conduct in question could be all kinds. Well, the conduct in question in this case and every other case can be all kinds. In the case of the annoying conduct, it could be any kind of conduct that takes place. The problem was, what's annoying is the problem. There's clearly conduct that is annoying, as they said in the case, spitting in somebody's face is clearly annoying. Can I ask a question about, I mean, we've been talking about the late 1800s, 1949, the present. What period should be relevant? I mean, someone getting up to harangue Supreme Court in whatever it was, 2013, 2014, is presumably a person living in 2014 and engaging in conversation and so forth in that year, and it is probably not a scholar of ancient meanings. So are the old, I mean, of course, the OED is wonderful because it gives the first use, although it doesn't report to say frequency of use at any particular period, but what should control? Well, that's the problem in this case, I think, is you have a term from the 18th century that was just incorporated in 1945 with, I think, no explanation in the legislative history as to what it meant, and so how can somebody now know what it means, given that there's no core meaning? Either way, they know language generally. People that operate in the world have to know the relevant language. Well, the problem with that is the Oxford English Dictionary said that formally, the formal or pompous speech, that was the former definition in the Oxford, the definition. Do you agree that we can discard that? Well, if you're asking what it meant in the 18th century or maybe even 1945, that may be what it meant then. Which Oxford dictionary are you talking, what year? I'm sorry, I don't have. Because if it was in 1945, then it would have been, that would have been the relevant time. I'm sorry, that's the current definition. It says formally, a formal or pompous speech was the former definition, not saying how far back. Formerly, comma, sometimes, comma. Yes, yes. But again, I don't know what either one of those means. I mean, when the government stands up and says, we can't define for you what a forceful speech is, that seems to me to almost end the inquiry. They can't, as I said, they've charged it. That's the definition they picked. They did not pick the public address. Well, what's wrong with that one? If it's a speech addressed to a public assembly, let's just suppose, I know that there's a question about whether that's the relevant one. But if we think about that meaning of harangue, which is a meaning of harangue, you wouldn't disagree with that. It is a meaning of harangue in the dictionaries. What's vague about that? It's also a meaning of oration, I might say. Yeah, which is, I don't know which way that cuts. That may be a good thing, that it covers both. Well, it's a meaning. What I think the problem is, is what you're demonstrating is that there's no core meaning of the word harangue. Right. So I understand that point, which is that, how do we know that that's the relevant definition? It could be one of the others. But let's just assume that all away. And I get that that's an obstacle. But if we focus on that particular definition, what is vague about that definition? A speech to a public. It's not even clear to me what a speech means in this context. That seems tough. That seems tough. Well, it was interesting when the Chief Justice said, if anybody else wants to talk in the courtroom while the court's in session, you could be held in contempt. He didn't say if anybody wants to give a speech or a harangue or an oration. I don't know that we can expect the Chief Justice on the spur of the moment to be quoting the statute. And so he's just speaking colloquially about what's at issue. And I think it's interesting to me that the statute speaks in terms of making a harangue oration. So we're not just talking about speech, the act of expressing oneself. We're talking about making something. And if we just focus on making a speech and we say making a speech to the public, is there anything vague about that? You have another argument, which is that doesn't care anything, because how do we know we're supposed to focus on that definition? Right. I'm assuming that away just for arguments purposes and just looking at that understanding. Remembering the preface that that's not the definition the government has pursued, I think that making a speech could be, it's closer. Let me put it that way. I mean, if you stand up and just say, which is what I think they said, citizens united bad, that's not clear to me. That's a speech. And so I don't see how the definition, a speech, it seems to me, has a beginning where you're setting forth the subject matter. It has a middle where you talk about it and a conclusion that you reach from it. If that's one definition of speech, honestly, I didn't look up the definition of speech because the government has never pursued that as the. Well, they did pursue it as a fallback definition. They say that they call it a limiting construction, but they do say one understanding that the court could adopt is a speech addressed to a public assembly. They they throughout the district court in this court, they argued for a forceful or angry speech as the definition. They did try to limit it at one point, but they didn't say that that was they tried to limit it to either a speech addressed to a public assembly or forceful or angry speech that tends to disturb. So even then they they waffled and they said, I'm sorry, saying that there is no core definition here. But in fact, if you look at every definition somewhere in there, you get forceful or angry speech, noisy, bombastic, ranting speech. In fact, rant is used to describe harangue in just about every definition. Why isn't that? Why doesn't that show that there is a core definition for that? If the core definition is ranting speech, again, that's not a definition the government argued. I don't know what ranting it seems to me has. Ranting is really subjective in the eyes of the listener. Somebody could talk and think that they're very lucid and the person listening would think this is just ranting. This doesn't make any sense at all. So I don't think that words are are never are rarely absolutely precise unless you're using some kind of scientific term, perhaps that has a completely precise and unitary meaning. So it's never the case that that words don't have a series of other words that are synonyms or give you some idea of what that word means. So how would you how would you ever do it? I mean, I've heard you say, I don't understand speech in this context. I don't know what formal is. I don't know, you know, I'm at a loss to understand how we would describe this in a way that you wouldn't find vague. Well, first of all, I'm not the only one that's at a loss. The government was also at a loss to define for you the term. But second, I think that it fits in with the cases, the Supreme Court, like in Gentile, where they held general and without elaboration is void for vagueness. Annoying is void for vagueness. Contemptuously is void for vagueness, they said, because it doesn't set any standards and it allows for discretionary enforcement. They also said loitering is a term, which is just as Thomas pointed out, is a term that's been used for centuries in the criminal law, they said was void for vagueness. So I don't see how it's any different than these unjust or unreasonable rates. Annoying, I don't see how it's any different than a number of cases. And in fact, maybe less core meaning and less well-defined than the case, than the words. But it seems to me you've got two things here. One is you've got whether you can discern a core meaning, which if you looked at all the definitions, you probably could. But you've also got context, which is, I think, the point that they were making in Johnson, they said because of the way they had interpreted the residual clause of the Armed Career Criminal Act, it came to be what occurred in the ordinary course of an offense. And they said we can't determine what happens in the ordinary course to go with the possibility of presents a risk of physical injury. And they said we can't determine that. They just... I understand. You think that what they said about substantial risk was just dicta. But they did tie that to it having a context, correct? They tied it to conduct. I'm sorry. I'm sorry. But you're saying that someone who is in the Supreme Court with the argument beginning, who has already been instructed, sit down and be silent, would not have an idea that what they were doing created a disruption or a problem. But they would have to know that it was a harangue or an oration. Well, that's what they were charged with. They could have been charged with Regulation 5, which is much clearer about a noise. They were charged under the statute. And the statute includes, I guess, loud, abusive, threatening language, correct? It also includes discharging firearms and fireworks. Well, we know they didn't do that. Right. But I mean, it's a strange mishmash of a statute. It's firearms, fireworks or explosives, setting a fire, or making a harangue or oration, or uttering a loud, threatening or abusive. There's, I think, yes, the simple answer is before you can be charged with a crime, and there's a heightened standard for both criminal statutes and for where they impinge on First Amendment rights, you have to know that you have to be given fair warning that your conduct is illegal. They were, I think, Regulation 5 comes much closer to giving fair warning about it, because it defines a noise as disturbing the Supreme Court. This contains, this statute contains nothing about disturbing the Supreme Court or anything about that. All it does is, say, make a harangue or oration. So yes, I think before you can be charged with a crime, you have to be given fair notice of your conduct. They may have had fair notice that their conduct was prohibited by Regulation 5. I don't think they had any fair notice that a harangue, their conduct was prohibited by this statute. I mean, it seems to me that at least on, I understand your argument that the terms harangue or oration, and maybe especially harangue, that there's some potential ambiguity around that so that one might not know exactly when you give a speech that qualifies, not just as a speech, but as an angry speech. Maybe what I just said was angry. I don't know. It depends on what you think. I didn't think so. Okay, well, that's right. Um, but I guess, um, what's interesting about this is that the supposition is that you can, apparently, give a speech. You just can't give a speech that qualifies as a harangue or oration. Let me put it this way. This statute doesn't, right, this statute doesn't forbid that. I think Regulation 5. Yeah, there may be other prohibitions against saying anything at all. When you say you can't, you can do it under this statute. I think that's correct. Right. But not under another statute. But the government has insisted on harangue, you know, going forward with the harangue and oration charge. Now, on the part of it that you're, the exchange with Judge Brown about disturbing the Supreme Court, I mean, a Supreme Court oral argument could be considered an oration. But nobody, I take it nobody thinks that the statute prohibits that because that's entirely consistent with what goes on in the Supreme Court. So it seems like that what's embedded within the statute is a notion that the corpus of matter that's prohibited is something that disrupts the Supreme Court, because otherwise there's all kinds of things that could fall within the statute, but nobody thinks they do because it doesn't disrupt the Supreme Court. Well, I mean, there could be many things not in the courtroom, like on the plaza, usually after oral arguments, lawyers hold press conferences. And I think there's been many a forceful or angry speech out there on the plaza that given by litigants, both the lawyers and the parties, that nobody's ever said, which clearly are forbidden under the government's definition. They're both under the government's definitions, both harangues and orations that are never forbidden. Some of those are even in the building. And there may even be, in the courtroom, whispered back and forth people talking about, well, an argument's going on that doesn't disturb, that could clearly be classified, I think, as a harangue or an oration. So it's the imprecision of the definition, not imprecision, but the lack of a court. There's no legal definition. There's no real settled case law definition. And there's certainly no core meaning. As we've discussed, the different definitions don't come up to a core meaning. Yes, there's different definitions. But that's the problem in the case. There's different definitions, and there's no core definition. Well, that's not a core meaning, though. That's given it multiple meanings. It's not an intersection. In other words, if the jury is required to find A, B, and C, then you've got a core. I think that's a multiplicity, not a core. No, not as I've proposed the charge to the jury. I understand. But now you're allowing the jury to convict on different meanings. I mean, there's lots of meanings. And now you're saying any one of those meanings. That's the problem. No, quite the opposite. My offering as a possibility is that the jury has to find A, B, and C in order to convict under Harang, not A, B, or C, A, B, and C. I mean, I disagree with that, that that would solve it. But it doesn't take away also the subjectiveness of the terms, like forceful and angry. I think your argument is as long as forceful and angry is in there anywhere, whether it's one of four elements or one of one, it's still subjective. And therefore, that's what the jury has to do. Sure, if the jury is going to be instructed, they have to follow ranting. I mean, I think you have to include everything then, bombastic, and ranting, and pompous, and those are all subjective. Pardon me? I don't know about that. Well, there are all the definitions. And if you're going to include every definition, you have to include vehement and all those words. And that clearly is subjective for the jury. I don't know. You could maybe define it. You have to find, that's the things you have to find. But how would you ever define those terms for the jury that they have to find that it was, what does vehement mean? What does bombastic mean? What does ranting mean? What does formal mean, forceful? That's the problem. How would you ever define that for the jury? Thank you. Thank you. You actually had no time left, but we'll give you two minutes of rebuttal time. Thank you, Your Honor. I appreciate it. Let me give you a hypothetical. Suppose in 1949, harangue had the meaning A, and today it has the meaning B, which does not overlap at all with the 1949 concept. But can a person be sent to prison on that basis? I'm not saying this is the case. It's hypothetical. Under that hypothetical, I believe one would look at Congress's intent in enacting the statute for what the core concept of the word means. What about the idea of notice to people after a conduct? Well, notice clearly goes beyond simply reading the statute and deciding what it means. Notice, as the Supreme Court understands it, implies routine legal usage. It encompasses the context. Has there been a tendency to rush you back to the OED and see what it covered for 60 years before? Not that I'm aware of, but I'm also not aware of a case in which defendants have argued that they simply don't understand what the terms mean, sort of writ large, because they look at different dictionary definitions. And as the court recognized, that's not an issue here. As we point out in our briefs, the meanings of harangue and oration are essentially unchanged since Congress enacted the statute in 1949. Well, can I ask you this? So it seems to me that under your understanding, if we go with forceful and angry, let's just go with forceful or angry, I think. If we go with forceful or angry, it's okay to give a speech. It's just not okay to give a forceful or angry speech. That has to be your understanding of the statute. Well, you also can't use loud language. I get that. I'm talking about this part of the statute, just on harangue. Your position is the statute doesn't bar the making of a speech. It bars the making of a forceful or angry speech. Yes, Your Honor. Right. And so when the Supreme Court gets gaveled in under this statute, there may be other prohibitions, but under this statute, your view is somebody can make a speech, but they can't make a forceful or angry speech. Even when the Supreme Court is gaveled in. Well, again, Your Honor, under solely the term harangue, that may be true, but there are other words used in the same exact statutory provision that bar loud language. Right. I understand that, but the way this case comes up, you're the one who brought the appeal. The appeal is only on harangue or oration. Yes, Your Honor. Right. And so we're only talking about that component of the statute. So what is Congress thinking when they say, actually, it's okay to give a speech. You just can't give a forceful or angry speech. It's not. Well, Congress doesn't appear to have been thinking that. Congress appears to have thought that harangue or oration covered the field of speech. Of speeches, which is broader than forceful or angry speeches or formal speeches. Although arguably formal forceful or angry covers and loud language does cover the field when taken together. But then your definition would be speeches. Your understanding of harangue or oration together would be the making of a speech. But that's not the way you've constructed it. Because even the most capacious understanding you put forward of those terms put together, they would still leave some speeches that could be given under this statute. There may be other prohibitions against doing that. I get that. But under this part of this statute, there would be some speeches that could be given. And it may be that that's the case. That is the end result of the government's proposed definition. The court disagrees and thinks that Congress meant to preclude all speeches and that harangue under its definition of an address or oration or a speech addressed to a multitude meant to encompass all speeches. That's a definition the government could certainly live with. Isn't the problem here that you actually that the coverage of this statute is broader than just a session of the Supreme Court, right? It's the grounds, the area outside. And in context, that might be different. I mean, any speech that interrupts an oral argument might be considered, you know, there would be a reason why you were doing it, presumably. On the other hand, if you were outside or you were talking to the press, that context might be different. Or would you? I agree with that, Your Honor. And I agree that the court need not consider the context of what Congress intended to prescribe on the Supreme Court plaza. Congress had reasons. So you agree that any speech given after the court has come into session is forceful or angry, by definition, any speech? Or formal, Your Honor. Or loud language. I don't think you can use loud language, because that's not even part of the case before us on appeal. Am I right about that? It is not, Your Honor. OK, so we're only talking about harangular oration. So your view is that when you're talking about a situation in which the Supreme Court's been gaveled into session, the making of any speech is necessarily the making of a forceful or angry speech. Maybe that's, I'm actually answering the question not because I mean to be rhetorical and obvious, because I'm not. I'm just curious to understand what your view is. I wrestled with the same question the court is asking, which is whether harangular oration cover every speech or whether there's some sliver left. As it was argued below and has been presented to this court, it appears that there might be some sliver left. Whether in this very specific context of whether after the Supreme Court has been gaveled in, whether there's some speech that could be made that's neither forceful, angry, nor formal, I have trouble envisioning what that speech would look like, given the context of the court having instructed everyone to be silent, to sit down, being instructed very specifically on how to leave, the order and decorum that is inherent in the nature of a session of the Supreme Court. I think, in fact, those terms may cover the field in that context. And again, if the court believes that harangue meant to cover all speeches addressed to an assembly, which the government proposed as a limiting construction that's not necessarily limiting, that's certainly something that the government could look up here. If I might just briefly address my embarrassing failure to be able to define forceful, which is certainly something I'll be worrying about for the next week and my opponent rightfully pointed out something like 12 times I failed to do, there are certainly available definitions to the court, vehement, loud, some combination of vehement and loud. But regardless, it's not a wholly subjective definition. And as the Supreme Court recognized in Johnson, as a general matter, we do not doubt the constitutionality of laws that call for application of a qualitative standard, in that case, such as substantial risk to real-world conduct. And that's exactly what the definition of a forceful or angry speech does here. It applies a qualitative standard to real-world conduct, in this case, giving a speech during a session of the Supreme Court. All right. Thank you. Thank you. Case will be submitted.
judges: Brown, Srinivasan, Williams